OPINION OF THE COURT
Lawrence H. Ecker, J.
Motion sequence Nos. 3 and 4 are consolidated for disposition.
Petitioners/plaintiffs G&C Transportation, Inc. and Newburgh Kabs, Inc. (hereinafter petitioners) are taxicab operators in the City of Newburgh who bring this hybrid proceeding pursuant to CPLR article 78 to review a determination of the City Council *874 of the City of Newburgh (hereinafter respondents) adopting City of Newburgh Ordinance No. 3-2008. Petitioners also seek a judgment pursuant to CPLR 3001 declaring Ordinance No. 3-2008 of chapter 272 of the Code of the City of Newburgh is unconstitutional on various grounds.
Background
On February 25, 2008, the City Council of the City of New-burgh adopted Ordinance No. 3-2008 (hereinafter the Ordinance) which amended chapter 272 of the Code of the City of Newburgh in its entirety.[1] The Ordinance sets forth a scheme for municipal regulation of taxicab services and taxi drivers operating within the City of Newburgh.
Petitioners, which are providers of taxicab services in the city, commenced this proceeding and action by notice of petition and amended petition returnable on July 16, 2008 seeking a preliminary injunction enjoining enforcement of the Ordinance, a judgment pursuant to CPLR article 78 annulling the Ordinance, and a declaratory judgment that the Ordinance is unconstitutional on various grounds. They argue, “the Ordinance will end the legitimate taxicab business in the City of Newburgh, and create chaos as residents needing transportation for basic staples of life are left stranded.” (Amended petition at 1-2.) While conceding respondents have the right to regulate the registration and licensing of taxicabs within the City of New-burgh, petitioners allege the effect of the Ordinance will be to impose economically impracticable costs on taxicab operations which will cause the cessation of taxicab operation, force the taxicab operators underground, and force fare increases that will prevent the residents who rely on taxicabs for the basic necessities of food, clothing, and medical treatment from having access to affordable transportation. They also allege the Ordinance imposes an unconstitutional taking of property by destroying trademarks and mandating the provision of services at below-cost rates. (Amended petition at 2.)
On January 5, 2009, this court (Alessandro, J.) issued an order sua sponte dismissing the declaratory judgment causes of action. It determined chapter 272, as amended, and its enforcement, did not violate any of the petitioners’ constitutional rights and was a reasonable exercise of legislative authority. On April 20, 2009, judgment was entered.
*875 On April 13, 2010, the Appellate Division, Second Department reversed, on the law, and reinstated the declaratory judgment causes of action. (72 AD3d 819.) It held Supreme Court gave no notice to the parties that it was contemplating the summary dismissal of the causes of action in issue. Furthermore, the respondents had made no application for the relief. As a result, the declaratory judgment causes of action were reinstated and are now before the court.[2]
Thereafter, on July 10, 2010, the respondents enacted Ordinance No. 11-2010 which amended Ordinance No. 3-2008 in several respects. In a preamble added as section 272-1, the respondents clarified that the regulatory scheme was limited in scope to taxi service wholly within city boundaries.[3]
The preamble states:
“The City Council of the City of Newburgh finds that suitable public transportation is lacking within the City of Newburgh and that transportation by taxicab within the city limits is an important and viable form of transportation for its residents and visitors. The City Council recognizes that Section 151 of the New York State Transportation Law permits the municipal regulation of taxi service which is conducted wholly within municipal boundaries. Therefore, the City Council further finds that it is necessary to regulate and license a taxi service conducted wholly within the boundaries of the City of Newburgh for the purpose of maintaining order, enforcing laws, protecting property, and caring for the safety, health, comfort, and general welfare of the inhabitants and visitors to the City of New-burgh. This ordinance does not seek to regulate, in any way, taxi service which is not conducted wholly within the City of Newburgh’s municipal boundaries.”
Transportation Law § 151, as referenced in the preamble, specifically exempts taxis and liveries with the seating capacity of fewer than 15 passengers from state regulation when the service is conducted wholly within a municipality authorized to adopt an ordinance relating to registration and licensing under *876 General Municipal Law § 181. Taxicabs are also exempt from federal regulation because taxicabs are local in nature. (49 USC § 13506 [a] [2].) The language of Transportation Law § 151 specifically authorizes a municipality to regulate certain “transportation for compensation” including taxi or livery services, provided such service is conducted wholly within its boundaries. (1996 Ops Atty Gen No. 96-39; People v Kadar, 14 Misc 3d 857, 859-860 [Ithaca City Ct 2006].)
The enactment of Ordinance No. 11-2010 also repealed section 272-11 (D), as contained in Ordinance No. 3-2008. Section 272-11 (D) effectively permitted the police to stop and visually inspect any taxicab pursuant to the City of Newburgh Police Taxi Inspection Safety Program. The repealed section had provided that the acceptance by an owner or operator of a taxi license issued by the City constituted the licensee’s continuing consent for the police to stop and inspect the taxicab. As set forth, infra, the repeal of this challenged section of the Ordinance has rendered moot a number of petitioners’ reinstated causes of action.
Petitioners move for summary judgment on their 11 remaining and reinstated claims to strike down Ordinance No. 3-2008 as unconstitutional on various grounds. Respondents cross-move for summary judgment dismissing the complaint in its entirety.
That a legislative enactment will be presumed constitutional is an elementary but significant principle of law. The strength of this presumption, sometimes underestimated, has been repeatedly underscored by the courts of this state. (Marcus Assoc. v Town of Huntington, 45 NY2d 501, 505 [1978]; Wiggins v Town of Somers, 4 NY2d 215, 218 [1958].) As the Court of Appeals has stated,
“The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality.” (Marcus Assoc. v Town of Huntington at 505, quoting Lighthouse Shores v Town of Islip, 41 NY2d 7, 11 [1976].)
In Lighthouse Shores, the Court stated,
“The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, *877 however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court’s power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that ‘no reasonable basis at all’ existed for the challenged portions of the ordinance.” (Id. at 11-12; see also Metropolitan Taxicab Bd. of Trade v New York City Taxi & Limousine Commn., 71 AD3d 508, 509 [1st Dept 2010] [a municipal administrative regulation should be upheld if the regulation has a rational basis and is not unreasonable, arbitrary, capricious, or contrary to the statute under which the regulation was promulgated].)
There is also no question, as petitioners concede, that a city is authorized to regulate the taxicab industry within its borders. Municipalities may regulate and control traffic. There are strong public interests in regulating taxicabs, which include preventing congestion on the streets, insuring traffic safety, providing its citizens with safe and reasonably priced service, preventing unsafe driving, and insuring that competent people Eire servicing its citizens. (Vecchio v Griffin, 143 AD2d 1003 [2d Dept 1988]; People v Jabaar, 163 Misc 2d 1045, 1048 [Just Ct 1994].)
Against this backdrop and applying these well-settled principles, the court will address petitioners’ 11 claims seriatim:
1. Fourth Cause of Action
Petitioners sirgue respondents have exceeded their legislative authority by enacting burdensome requirements on drivers to obtain taxicab licenses, mandating uniform colors for all vehicles, random police stops, and other requirements in excess of respondents’ lawful powers to regulate.
Respondents counter that Gary Hunter, president of petitioner G&C Transportation, Inc. and Newburgh Kabs, Inc., and petitioners’ counsel, Bruce Stern, Esq., appeared at a City Council meeting on August 7, 2007 and opined that it would be to the benefit of the police and the public if the taxicabs in the City of Newburgh were uniformly recognizable, as the public needed to identify legitimate taxicab companies.
With respect to license fees, Mr. Hunter and Mr. Stern voiced no objection at the August 7th meeting to the proposed $350 fee *878 increase from $150 to $500 on its 20 plus vehicle fleet. In fact, they suggested a higher fee. The other six taxicab companies present at the meeting stated the increase was too severe and unaffordable.
Otherwise, petitioners offer no proof or any specific facts in admissible form as to what driver requirements are burdensome. Specifically, they fail to establish the City has no reasonable basis for mandating color requirements for taxicabs, a requirement they appear to have been a proponent of during the enactment of the Ordinance. The challenge to random police stops is no longer in controversy as section 272-11 (D) was repealed by Ordinance No. 11-2010.
The fourth cause of action is dismissed.
2. Fifth Cause of Action
Petitioners complain in the fifth cause of action that sections 272-11 and 272-33 violate the New York State and United States Constitutions’ prohibitions against unreasonable searches and seizures by permitting random police stops and searches of taxis without probable cause. (Amended petition 1! 12.) As aforesaid, section 272-11 (D) was repealed prior to the filing of the motion for summary judgment. Further, this aspect of the Ordinance seeks to assure that the taxicabs operating in the City of New-burgh have been properly licensed and inspected. Such inspections have been held to be constitutionally valid. (Drive Trans Corp. v New York City Taxi & Limousine Commn., 134 Misc 2d 1035 [Sup Ct, NY County 1987]; see generally Donovan v Dewey, 452 US 594 [1981].)
The other challenged provision, section 272-33 (now section 272-34), does not relate to police stops, but rather to the declaration of a state of emergency by the City Council, City Manager, or other public official, including the Chief of Police, during which the provisions of the Ordinance may be suspended, in whole or in part, including the suspension of fare requirements. Petitioners have made no showing to overcome the strong presumption of constitutionality in this regard, or that the use of police powers in a declared state of emergency would be arbitrary conduct by the respondents.
The fifth cause of action is dismissed.
3. Sixth Cause of Action
Petitioners’ sixth cause of action alleges the
“Ordinance result[s] in unconstitutional takings under the New York State and United States Consti *879 tutions by mandating costs, fees and prices that result in the inability to provide ‘local’ service (point-to-point within the City of Newburgh) that are greater than the permissible charges for providing the service; destroy[s] Petitioner^’] trademark vehicle color; mandate[s] provision of services for less than the cost of providing those services.” (Amended petition 1i 14.)
In Lucas v South Carolina Coastal Council (505 US 1003, 1015 [1992]), the Supreme Court held that legislation is considered a regulatory taking when government regulation authorizes the permanent physical occupation of property, or when the regulation denies an owner all economically beneficial use of the property. Since the Ordinance does not authorize the permanent physical occupation of property, it will be analyzed using the second prong of the Lucas test.
Petitioners claim that the Ordinance deprives their ability to make a living because the costs for operating cabs equal or exceed the fares set by the Ordinance. In support of this position, petitioners submit the affidavit of Gary Hunter, president of G&C Transportation, Inc. and Newburgh Kabs, Inc., in which he claims it costs over $20 per hour to operate a taxicab. These represent direct vehicle costs — insurance, tires, gasoline, and driver’s salaries. (II10.) Hunter further claims that drivers typically perform four trips per hour. (1IH 15, 26.) Because the Ordinance sets intracity fares at $5, $2.50 for a senior citizen, and $1 per five-minute wait time, he contends the Ordinance prevents petitioners from making a profit. Even accepting these claims as true, petitioners do not address the fact that the Ordinance has actually raised fares from $3 to $5, nor do petitioners account for the possibility of securing other than intracity fares which would not be subject to the $5 fare set by the Ordinance. Thus, petitioners have failed to show that the Ordinance denies “all economically beneficial use” of their property under the Lucas test, or a deprivation significant enough to satisfy the heavy burden on someone alleging a regulatory taking.
Therefore, the sixth cause of action is dismissed.
4. Eighth Cause of Action
Petitioners’ eighth cause of action alleges various sections of the Ordinance constitute an illegal delegation of legislative and judicial powers to the Chief of Police and City Clerk. Petitioners contend the Ordinance permits such city officials to create ad *880 ditional regulatory requirements as to the condition of the vehicles and to otherwise perform illegal and improper functions. (Amended petition 1i 19.) Petitioners cite six sections of the Ordinance in this regard.
• Section 272-4 (C) (now section 272-5 [C]), authorizes the Chief of Police to require such additional information as shall be reasonably related to the applicant’s fitness and/or eligibility as he may deem necessary from any applicant for any license required by this chapter. The section also permits the Chief of Police to waive the production of any information from any applicant “if in his opinion such requirement is unreasonable, unnecessary, inappropriate or unjust under the circumstances.”
• Section 272-7 (now section 272-8) provides that upon the renewal of the taxicab driver’s license, the Chief of Police and other city licensing officials may require further information as they may deem necessary.
• Section 272-12 (now section 272-13) provides upon a taxicab vehicle license application, the Chief of Police may request such further information, as deemed necessary, including but not limited to any and all information concerning the current and former state and history of repairs to such vehicle.
• Section 272-15 (A) (now section 272-16 [A]) mandates all vehicles to pass a prelicense inspection and to be found in “a thoroughly safe condition for the transportation of passengers,” and otherwise in compliance with all Code requirements. It authorizes the Chief of Police to designate up to five official inspection stations for taxicab vehicles for this purpose.
• Section 272-17 (now section 272-18) authorizes the suspension or revocation of taxicab licenses and/or driver’s licenses “for cause” after a hearing by the Chief of Police. Various criteria are set forth as constituting “cause” including a violation of any section of the Ordinance, the use of the taxicab for immoral or illegal purpose, or criminal conviction of the licensee.
*881 • Section 272-24 (B) (now section 272-25 [B]) empowers the duty officer at the police station at the time of a fare dispute to determine the dispute. Any party may appeal such resolution to the Chief of Police.
Petitioners assert all of the above provisions constitute an impermissible delegation of power to the Chief of Police in enforcing portions of the Ordinance.
It is beyond cavil that while the legislature cannot delegate its lawmaking functions to other bodies, there is no constitutional prohibition against the delegation of power to an agency or commission to administer the laws promulgated by the legislature provided that power is circumscribed by reasonable safeguards and standards. (Boreali v Axelrod, 71 NY2d 1 [1987]; Matter of Levine v Whalen, 39 NY2d 510, 515 [1976]; Matter of A.J. McNulty & Co., Inc. v Greenberger, 82 AD3d 506 [1st Dept 2011].)
The court finds the six provisions in issue are rationally based, not arbitrary, capricious, or unreasonable, and provide reasonable safeguards, standards and guidelines in the areas of licensing, inspection, and fare disputes. The delegation of authority to the Chief of Police and other city officials to implement the legislature’s intent to regulate and license taxi service wholly within the boundaries of the City of Newburgh is constitutionally valid.
In addition, petitioners have not offered any proof in admissible form to meet its heavy burden to overcome the presumption of constitutionality. There has been no showing that the provisions fail to provide reasonable notice of proscribed conduct or are so vague as to violate due process of law.
Accordingly, the eighth cause of action is dismissed.
5. Ninth Cause of Action
Petitioners’ ninth cause of action is dismissed as moot because the challenged section, section 272-11, was repealed in Ordinance No. 11-2010.
6. Tenth Cause of Action
Petitioners’ tenth cause of action is substantially similar to its eighth cause of action. Accordingly, for the reasons previously set forth, it is dismissed.
7. Eighteenth Cause of Action
Petitioners’ eighteenth cause of action challenges the Ordinance at section 272-16 (E) (12) (now section 272-17 [E] [12]) that limits a driver from operating a taxicab more than 12 *882 hours in any continuous 24-hour period, except the driver of a taxicab exclusively hired or engaged for special trips or excursions. The petitioners allege the regulation is arbitrary and capricious because: (1) it limits the hours of work for certain taxicab work but not other types of work without specifying any basis whatsoever for making such distinction, thus “irrationally” restricting the ability of people to make a living; and (2) the City accumulated no empirical data that this provision is in the interest of health, safety and welfare. (Amended petition 1Í 41; mem of law, point VIII.)
Respondents rely on the presumed validity of the Ordinance, and note Transportation Law § 211 applies nearly identical limits on common carriers (“no driver of such motor buses shall drive more than twelve hours . . . and . . . shall have at least twenty-four consecutive hours off duty in every period of seven consecutive days”). They also point out petitioners have made no showing to meet their heavy burden in challenging the regulation’s constitutionality.
The court finds a 12-hour shift limitation is rationally based and clearly relates to the health, safety and welfare of both taxicab passengers and the public at large. Both groups might be endangered by fatigued taxi drivers operating their taxicabs for more than 12 hours in any continuous 24-hour period, and the attendant danger of a driver falling asleep at the wheel.
The eighteenth cause of action is dismissed
8. Nineteenth Cause of Action
Petitioners’ nineteenth cause of action alleges sections 272-23 and 272-33 (now sections 272-24 and 272-34) constitute a taking of property without just compensation under the New York State and United States Constitutions by mandating petitioners to provide taxi services at a fare that is less than the cost of providing the service. (Amended petition K 43.)
This cause of action is a restatement of petitioners’ sixth cause of action and is dismissed accordingly.
9. Twentieth Cause of Action
Petitioners’ twentieth cause of action alleges
“[t]he Ordinance attempts to regulate licensing, registration and operation pre-empted by the Laws of the State of New York including . . . irrationally, unreasonably, arbitrarily and capriciously over-regulating the requirements to obtain a taxicab *883 operator’s license and over-regulating the requirements for the equipment and condition of taxicab vehicles, and vehicle inspection requirements.” (Amended petition 1Í 44.)
Such general and broad language is not followed by any specificity as to what section or sections of the Ordinance are being challenged, or nonconclusory factual allegations. Once again, petitioners have offered no proof in admissible form to entitle it to summary judgment or an overturning of the Ordinance.
In the absence of any nonconclusory factual showing of irrationality or unreasonableness as to a specific section of the Ordinance, petitioners have not overcome the presumption of the Ordinance’s constitutionality.
The twentieth cause of action is dismissed.
10. Twenty-Third Cause of Action
Petitioners’ twenty-third cause of action contends the Ordinance is unreasonable, arbitrary, and capricious and in violation of General Municipal Law § 181 which preempts the extent to which the respondents are permitted to regulate the taxicab industry. (Amended petition 1Í 51.)
It is well settled that local governments have been delegated broad powers to enact local legislation consistent with state laws. The State Constitution’s “home rule” provision (art IX, § 2) “confers broad police power upon local government relating to the welfare of its citizens” (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987], affd 487 US 1 [1988]). This grant of authority includes the ability of a municipality to enact local laws regarding the “protection, order, conduct, safety, health and well-being of persons or property” within its borders (NY Const, art IX, § 2 [c] [10]; see Municipal Home Rule Law § 10 [1] [ii] [a] [12]; Anonymous v City of Rochester, 13 NY3d 35, 51 [2009, Graffeo, J., concurring]).
General Municipal Law § 181 empowers cities, towns, and villages to enact ordinances regulating the registration and licensing of taxicabs and to limit the number of taxicabs to be licensed. Far from preempting the respondents, General Municipal Law § 181 is enabling legislation which gives the City of Newburgh the ability and authority to regulate its own taxicab industry consistent with the State Constitution and state statutes.
Broadly speaking, state preemption occurs in one of two ways: first, “conflict preemption” when a local government adopts a *884 law that directly conflicts with a state statute (see e.g. Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 107 [1983]), and second, “field preemption” when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility (see e.g. New York State Club Assn. v City of New York, supra). In field preemption, there must be an intent on the part of the State to occupy the entire field. (Anonymous v City of Rochester, supra; Willow Woods Manufactured Homeowner’s Assn., Inc. v R & R Mobile Home Park, Inc., 81 AD3d 930, 933 [2d Dept 2011].)
Neither type of preemption exists here. Clearly, Ordinance No. 3-2008, as amended by Ordinance No. 11-2010, falls within the local regulatory oversight envisioned by General Municipal Law § 181.
Accordingly, petitioners fail to state a cause of action grounded in the doctrine of preemption. The twenty-third cause of action is dismissed.
11. Thirtieth Cause of Action
Petitioners’ thirtieth cause of action alleges: “[t]he Ordinance is a collection of random, baseless, irrational, unreasonable, arbitrary and capricious provisions, fees, and charges, resulting in over regulation of the taxicab industry in the City of New-burgh, and is confiscatory, in violation of the Constitutions of the State of New York and of the United States.” (Amended petition H 66.) Petitioners further contend the overregulation includes requiring information for driver’s licenses that bears no relation to the ability or fitness of a driver to operate a taxicab; imposes impossible information and financial burdens on drivers; requires extraneous and costly equipment expenditures for the vehicles; requires age limits on vehicles that bear no relation to the fitness of the vehicle for operation as a taxicab; and makes it economically impracticable to operate a taxicab in the City of Newburgh by limiting fees that can be collected while increasing the operating costs. (Amended petition If 67.)
Section 272-16 (B) (1) (now section 272-17 [B] [1]) prohibits a taxi license being issued for the first time to a vehicle manufactured prior to January 1, 1997. Section 272-16 (B) (20) (a) (6) (c) (now section 272-17 [B] [20] [a] [6] [c]) requires that trip sheets with certain trip information shall be kept on file and made available for audit, examination and inspection by any city law enforcement or code enforcement officer at all reasonable times for a minimum of two years.
*885 Respondents argue that vehicles manufactured after 1997 are more likely to be equipped with safety features such as antilock brakes, passenger and side airbags, traction and electronic stability controls than those manufactured prior to 1997. They state it is not the City’s burden to produce data or studies to support such assumptions. Petitioners must demonstrate that limiting the use of older vehicles has no relation to public safety. They have not done so.
The court finds these requirements are not arbitrary and capricious, and are reasonably related to the regulation of the taxicab industry for the general welfare and safety of the citizens of the City of Newburgh, including the taxi riding public. Petitioners’ claims are substantially lacking in any specificity or proof. They have offered no evidence in support of their attack against the complained of licensing and inspection requirements.
The thirtieth cause of action is dismissed.
In view of the foregoing it is: ordered that petitioners’ motion for summary judgment is denied; and it is further ordered that respondents’ cross motion for summary judgment is granted; and it is further ordered and declared that chapter 272 of the Code of the City of Newburgh, as amended by Ordinance No. 11-2010 is valid, constitutional, and enforceable as enacted.

. On July 12, 2010, chapter 272 was further amended by Ordinance No. 11-2010 as more folly set forth, infra.

. Namely, petitioners’ fourth, fifth, sixth, eighth, ninth, tenth, eighteenth, nineteenth, twentieth, twenty-third, and thirtieth causes of action.

. The addition of the preamble to Ordinance No. 11-2010 as section 272-1 resulted in all the subsequent sections in Ordinance No. 3-2008 being upwardly renumbered fay one, so, for example, section of 272-33 under Ordinance No. 3-2008 is now 272-34 under Ordinance No. 11-2010.